UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SALVADOR NUNEZ,

      Petitioner,

v.                      Case No: 2:12-cv-51-FtM-29CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

      Respondents.[1]

---

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief and a supporting memorandum filed pursuant to 28 U.S.C. § 2254 by Salvador Nunez ("Petitioner") who is presently confined at the Everglades Correctional Institution in Dade County, Florida (Doc. 1; Doc. 2).

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (hereinafter the "Rules") provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent." The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfield v. Padilla, 542 U.S. 426, 435 (2004). This is "the person with the ability to produce the prisoner's body before the habeas court." Id. at 435-36. When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." Id. at 436 (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner, proceeding *pro* se, attacks the convictions and sentences for first degree felony murder and robbery entered by the Twentieth Judicial Circuit Court in Collier County, Florida, Id.  Respondent filed a response to the petition, and Petitioner filed a reply to the response (Doc. 25; Doc. 28).

Petitioner raises thirteen claims in his petition.  He asserts that: (1) the trial court abused its discretion when it denied Petitioner's request for an independent act instruction; (2) the trial court erred when it denied Petitioner's motion for a judgment of acquittal on the robbery charge; (3) trial counsel was ineffective for failing to raise an "afterthought" defense; (4) appellate counsel was ineffective for failing to argue that the trial court erred when it did not read an Allen charge to the jury; (5) trial counsel was ineffective for failing to request a competency hearing for Petitioner prior to trial; (6) trial counsel was ineffective for failing to properly investigate Petitioner's case; (7) trial counsel was ineffective for failing to present the testimony of a key witness; (8) trial counsel was ineffective for failing to make the trial court aware that Petitioner was delusional; (9) the trial court erred when it instructed the jury with an outdated jury instruction on second degree murder; (10) trial counsel was ineffective for failing to object to an outdated jury instruction on second degree murder; and (11)-(13) the post-conviction court erred by dismissing as time-barred several claims

of ineffective assistance of counsel that had been presented in an untimely supplemental 2010 Rule 3.850 motion (Doc. 1 at 5-25).[2]

Upon due consideration of the petition, the response, the reply, and the state court record, the Court concludes that the petition must be denied. Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. See Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254; Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.  Background and Procedural History

On August 28, 2002, Petitioner was indicted for first degree murder (count one) and armed robbery (count two) (Ex. 1 at 33-34).[3]  After a jury trial, Petitioner was found guilty as charged.

---

[2] In response to the Petition, Respondent argued, *inter alia*, that Claims Five and Eight, which appear to assert identical arguments, were procedurally barred because "[n]o specifics are set forth in the petition other than a vague reference to counsel's testimony at the state evidentiary hearing" and because Petitioner did not "allege in a timely rule 3.850 motion that his trial counsel was remiss for not requesting a competency hearing before or at trial and then appeal the denial of such a claim." (Doc. 25 at 39).  In reply, Petitioner concedes that he did not set forth specifics in the petition and that the claims are procedurally barred from federal habeas review (Doc. 28 at 9).  Because Petitioner has abandoned Claims Five and Eight, they will not be further addressed by this Court.

[3] The volumes and exhibits referenced in this case refer to those filed by Respondent on October 29, 2012 (Doc. 27).

Id. at 52-53,113.  Petitioner was sentenced to life in prison on the murder count and to a concurrent fifteen year sentence on the robbery count.  Id. at 112-42.  Petitioner's convictions and sentences were affirmed by Florida's Second District Court of Appeal (Ex. 4); Nunez v. State, 939 So. 2d 1071 (Fla. 2d DCA 2006).

Petitioner filed a state petition for writ of habeas corpus in which he asserted that appellate counsel had rendered ineffective assistance in his direct appeal (Ex. 6).  The petition was denied without a written opinion by Florida's Second District Court of Appeal (Ex. 7); Nunez v. State, 956 So. 2d 1191 (Fla. 2d DCA 2007).

Petitioner filed a motion and two amended motions for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. 11; Ex. 13; Ex. 14a). The post-conviction court summarily denied three of Petitioner's claims and held an evidentiary hearing on the remaining claims (Ex. 14; Ex. 14b).  After an evidentiary hearing, the post-conviction court denied the remaining claims.  The denial was *per curiam* affirmed by the Second District Court of Appeal (Ex. 20); Nunez v. State, 65 So. 3d 524 (Fla. 2d DCA 2011).

---

References to the trial transcript, located in Volumes II and III are cited as (T. at ___).  References to the evidentiary hearing transcript, located in the supplement to Volume II are cited as (E. H. at ___).

On May 21, 2010, Petitioner filed a fourth Rule 3.850 motion which was denied by the post-conviction court as untimely filed (Ex. 37; Ex. 38).  The Second District Court of Appeal *per curiam* affirmed (Ex. 43); Nunez v. State, 49 So. 3d 758 (Fla. 2d DCA 2010).

Petitioner filed the instant petition in this Court on January 30, 2012 (Doc. 1).  Respondent agrees that the petition was timely filed (Doc. 25 at 7).

## II.   Governing Legal Principles

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants

deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Bottoson, 234 F.3d at 531 (quoting

Williams, 529 U.S. at 406).  The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.  Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that

the factual premise was incorrect by clear and convincing evidence").

### B. Standard for Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]"  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time

of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### C.  Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)   there is an absence of available State corrective process; or

(ii) circumstances exist that render such
process ineffective to protect the rights of
the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Conner, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural

grounds under state law. <u>Coleman</u>, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" <u>Murray v. Carrier</u>, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it

is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  Schlup v. Delo, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial."  Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

III. **Analysis**

A. **Claim One**

Petitioner asserts that the trial court abused its discretion when it denied Petitioner's request for an "independent act" jury instruction (Doc. 1 at 5).  In his brief on direct appeal, Petitioner argued, in terms of state law only, that shooting the store owner after the robbery "was not part of the common plan and was rather an undisclosed motive on the part of [a co-defendant]." (Ex. 2 at 3).

Respondent urges that this claim is unexhausted and procedurally barred because Petitioner did not present the constitutional nature of his claim to the state courts (Doc. 25 at 15-18).  In his reply, Petitioner argues that "he was not required to use 'magic words' to preserve the constitutionality of this issue" because he "more than fairly stated a due process violation." Id.  Upon review of the pleadings and the record, the Court concludes that Petitioner's failure to exhaust the

constitutional dimension of this claim in the state courts precludes federal habeas corpus review.

During the charging conference, defense counsel requested that the trial court read an independent act instruction (T. at 330-31).[4]  Defense counsel noted that the independent act instruction was a standard instruction, and he provided the trial court with Florida state case law that supported it being read to the jury.  Counsel did not argue to the trial court that any failure to read the instruction to the jury would violate Petitioner's constitutional rights.  Id.

After hearing arguments from both defense counsel and the state, the trial court denied the request as follows:

> Gentlemen, I have read all these cases that you've provided me before the lunch break on the independent act instruction and my ruling is that the independent act instruction does not – is not applicable in this case.  All the evidence to this point is that the victim was killed in . . . the course of the robbery.
>
> And she apparently was outside the store as the people were leaving with their guns drawn or after the use of guns inside and she attempted to retrieve the fruits of the crime from them or from Mr. Mireles.  And in the struggle over the box containing the money, she was shot and killed.

---

[4] The standard instruction, which the Florida Supreme Court adopted in 1997, defines an independent act to include one which is "outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant." Fla. Std. Jury Inst. (Crim.) 3.6(l).

The use of deadly force in the form of a weapon in the course of the robbery does not permit the independent act instruction.  All these cases, Shaw v. State at 824 So. 2d 265 and the others generally hold that when the crime is unrelated to and independent of the original plan then the – the independent act instruction would be appropriate.

Fault of another language of another case, that is Upshaw v. State, Second District at 871 So. 2d 1015, that the independent act doctrine arises when one co-felon who previously participated in a common plan does not participate in acts committed by his co-felon, which fall outside of and are foreign to the common design of the original collaboration.  And the original collaboration in this case was the armed robbery of the store.  And the shooting of the victim doesn't fall outside of or foreign to an armed robbery of that store.

(T. at 337-38).  In his brief on direct appeal, Petitioner argued that the trial court abused its discretion when it denied the instruction because he (Petitioner) stayed in the car during the robbery and had been told that nobody would get hurt (Ex. 2 at 8). He argued that Ernesto Mireles (the shooter) did not necessarily shoot the victim to stop her from taking back the money he had stolen, but rather, had told Petitioner he shot her because "that's what I do." Id. at 9.  Petitioner supported his argument with citation to Florida case law, but did not argue that the trial court's failure to read an independent act instruction violated his constitutional rights.

Before a federal court may grant habeas relief, the petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b); Henderson, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."). The prohibition against raising an unexhausted claim in federal court extends to both the legal theory of relief and to the specific factual contention that supports relief. Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004). Petitioner's state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. Duncan, 513 U.S. at 365-66.

Although Petitioner now claims in his reply that the state courts should have known that he was raising a due process claim and that he was not required to use any "magic words" to alert the state courts of the constitutional nature of his claim (Doc. 28 at 3), such an argument is not supported by the relevant authority. For a habeas petitioner to claim that he fairly presented a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Rather, in order to ensure that state courts have the

first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

While these broad principles are relatively clear, the district court correctly noted that many courts have struggled to pinpoint the minimum requirements that a habeas petitioner must meet in order to exhaust his remedies. For instance, the Supreme Court recently wrote that a petitioner wishing to raise a federal issue in state court can do so "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' " Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). If read in a vacuum, this *dicta* might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement [:] to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." This is consistent with settled law established by the Supreme Court. We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.' "

McNair v. Campbell, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (emphasis added) (internal citations omitted). Simply put, "[t]he exhaustion doctrine requires the petitioner to 'fairly present'

his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right." <u>Pearson v. Sec'y, Dep't of Corr.</u>, 273 F. App'x 847, 849-50 (2008)(citation omitted).  As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." <u>Reedman v. Thomas</u>, 305 F. App'x 544, 545-46 (11th Cir. 2008) (internal citation omitted).  In the case at hand, Petitioner made no reference to his due process rights, and as a result, he did not properly exhaust this claim. <u>See</u> <u>Pearson</u>, 273 F. App'x at 847 (claim unexhausted when petitioner cited exclusively to state cases, all of his substantive arguments addressed state law, and nothing in the argument alerted the state court to a federal due process claim).

Petitioner has not alleged that some external factor impeded his efforts to properly raise this claim on direct appeal. <u>Wright</u>, 169 F.3d at 703. Nor has Petitioner presented new, reliable evidence not presented at trial that would support an actual innocence claim. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). Florida's procedural rules and time limitations preclude a second direct appeal. Fla. R. App. P. 9.140(b)(3) (defendant wishing to appeal a final judgment must do so within "30 days following

rendition of a written order"). Consequently, Claim One is procedurally barred and cannot be considered by this Court.[5]

Even assuming *arguendo* that Petitioner properly exhausted this claim, he is not entitled to habeas relief. An error in instructing the jury cannot constitute a basis for federal habeas relief unless "the error so infected the entire trial that the resulting conviction violates due process." Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992) (quotation omitted). "It is not sufficient that the instruction was undesirable, erroneous, or even universally condemned." Id. (quotation omitted). Consequently, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. Jones v. Kemp, 794 F.2d 1536, 1540 (11th Cir. 1986); Bryan v. Wainwright, 588 F.2d 1108 (5th Cir. 1979); Pleas v. Wainwright, 441 F.2d 56 (5th Cir. 1971). Where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden, because an incomplete or omitted instruction is less likely to be prejudicial than an overt

---

[5] To the extent Petitioner now argues that the state courts' rejection of Claim One was based upon a misapplication of Florida law, the claim is not cognizable on habeas review. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]").

misstatement of the law. Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Jacobs v. Singletary, 952 F.2d 1282, 1290 (11th Cir. 1992).

A jury charge is adequate if, when viewed as a whole, it fairly and correctly states the issues and law. United States v. Russell, 717 F.2d 518, 521 (11th Cir. 1983). In Florida, trial courts are generally required to adhere to the standard jury instructions after determining whether the standard instructions accurately and adequately state the relevant law. See Moody v. State, 359 So. 2d 557 (Fla. 4th DCA 1978). As indicated supra at footnote four, an independent act occurs when a person other than the defendant commits or attempts to commit a crime which: (1) the defendant did not intend to occur; (2) the defendant did not participate; and (3) was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant. Calabrese v. State, 886 So. 2d 396, 398 (Fla. 1st DCA 2004); Ray v. State, 755 So. 2d 604, 608-09 (Fla. 2000). A killing "in the face of either verbal or physical resistance by a victim is properly viewed as being within the original criminal design." Jones v. State, 804 So. 2d 551, 552 (Fla. 3d DCA 2002).

In the instant case, the independent act doctrine is inapplicable because the murder of Islis Lafitte did not exceed the scope of the robbers' original plan to rob her store. The trial court's conclusions that: Lafitte was outside her store as

the robbers were leaving with their guns drawn; Lafitte struggled with Mireles in attempt to retrieve her money; and during the struggle, Lafitte was shot and killed are supported by the record.

Petitioner testified at trial that his co-defendants wanted him to go with them to commit a robbery in a store (T. at 344). Petitioner did not want to go, but felt pressured into doing so because his co-defendants used foul language, told him he was "soft," and assured him that nobody would get hurt. Id. at 344-45.  Petitioner testified that he drove his co-defendants to the store and "when we got to the store, Mr. Ernesto Mireles, Baldomero Nunez, and Oscar Luna got out of the car and went inside with guns and robbed the store." Id. at 348.  He observed Islis Lafitte confront Mireles as he was leaving the store with her money. Id. at 348-49.  She struggled with Mireles, and Petitioner saw her fall. Id.  He also testified that as he and his co-defendant drove away, one of the co-defendants continued to shoot outside the car. Id. at 350.  On cross-examination, Petitioner admitted that as he drove his co-defendants to the store, he knew there would be a robbery and knew that his co-defendants were carrying guns. Id. at 354, 356-57).

Petitioner's testimony at trial was consistent with his statement to the police after his arrest (Vol. I at Supp. II). Petitioner told the police that he had initially resisted his co-defendants' plan to rob Lafitte's store, but Mireles told him that

it would be easy. Id. at 166.  He admitted that he knew his co-defendants were carrying guns as they entered the store and that they had purchased the guns for the purpose of robbing the store. Id. at 171-72.  He stated that as Mireles was leaving the store with a carton of quarters, the victim "kept on grabbing it and grabbing it and grabbing it." Id. at 173.  He observed Mireles tell the victim to "shut up" and "then [Mireles] pulled out the gun like that and it went off." Id. at 177.  Petitioner said that another co-defendant noticed a person trying to get the license plate of his car as they drove away, and Mireles began shooting out the door. Id. at 179.

Based upon Petitioner's trial testimony and his statement to the police, the record shows that the shooting of Islis Lafitte all occurred during the robbery and escape from Lafitte's store. The trial court did not abuse its discretion or violate Petitioner's due process rights by denying the independent act instruction because such an instruction was unsupported by the evidence. See Jones, 804 So. 2d at 552 (defendant who helped plan armed robbery was criminally liable for shooting of store owner who offered verbal resistance even if defendant was not physically present because the shooting was in furtherance of the criminal design); Lovette v. State, 636 So. 2d 1304 (Fla. 1994) (defendant was not entitled to independent act instruction where he was a willing participant in the armed robbery of the store, and co-

defendant's killings of victims were in furtherance of the robbery because they lessened the immediate detection of the robbery and apprehension); Perez v. State, 711 So. 2d 1215 (Fla. 3d DCA 1998) (defendant was not entitled to an 'independent act' instruction as to the killing of a bystander during escape from a store robbery where defendant and co-defendants agreed to rob the store, defendant was a willing participant in the armed robbery).

Further, the trial court fully and correctly instructed the jury on the offense of first degree murder and first degree felony murder, and the instructions correctly set forth the elements of the offenses which were required to be proven beyond a reasonable doubt before finding Petitioner guilty of the offense of felony murder (T. at 390-409).  A jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and law. United States v. Russell, 717 F.2d 518, 521 (11th Cir. 1983).  Therefore, no special instruction was required, and in addition to being unexhausted, Claim One fails on the merits. 28 U.S.C. § 2254(d).

B.   Claim Two

Petitioner asserts that the trial court erred when it denied his motion for a judgment of acquittal on the robbery charge (Doc. 1 at 6).  Specifically, Petitioner argues that his motivation for robbery was not a desire to obtain stolen property; rather Petitioner claims that he "was involved in the robbery [because] he felt pressured by the other three [robbers]" (Doc. 2 at 8).

Therefore, Petitioner argues, his conviction for robbery cannot be maintained (Doc. 2 at 7) (citing to Beasley v. State, 774 So. 2d 649, 662 (Fla. 2000)).  Because robbery was the underlying felony to support his conviction for felony murder, Petitioner asserts that his conviction for felony murder must be reversed (Doc. 2 at 8).

Respondent asserts that this claim is unexhausted because although Petitioner raised it on direct appeal, he did so in terms of state law only (Doc. 25 at 25).  Indeed, a review of Petitioner's brief on direct appeal indicates that he argued the merits only as a claim of insufficient evidence under Florida law. Specifically, Petitioner argued that a conviction for robbery cannot be upheld "in those cases where the record discloses that, in committing the murder, the defendant was apparently motivated by some reason other than a desire to obtain the stolen valuable." (Ex. 2 at 11).  Petitioner asserted that peer pressure, not a desire for the victim's property, motivated his participation in the robbery and he is "not therefore guilty of felony murder, as robbery is the underlying felony in this case." Id. at 13.

Petitioner did not assert any constitutional violation in his brief on appeal and does not currently do so in his habeas petition.  Petitioner does not allege that some external factor impeded his efforts to properly raise this claim in the state courts and has not presented new, reliable evidence not presented

at trial to support an actual innocence claim.  Claim Two is unexhausted and procedurally barred. See supra Claim One.

Even assuming *arguendo* that Petitioner's appellate brief exhausted this claim, Claim Two fails on the merits.  The Due Process Clause of the Fourteenth Amendment requires the state to prove each element of an offense charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 315 (1979).  Under Jackson, federal courts must look to state law for the substantive elements of the offense, but to federal law for the determination of whether the evidence was sufficient under the Due Process Clause. Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012).  For federal due process review, "[t]he relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

Petitioner was convicted of robbery under Florida Statute § 812.13.  That statute defines robbery as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." Id.  Evidence was presented at trial that: Petitioner was aware a robbery was going to take place; he was aware that each of his three co-defendants

were going to use guns during the robbery; he was told that the store contained a great deal of money and the crime would be easy because only two old men minded the store; he agreed (albeit reluctantly) to take part in the robbery by driving the getaway car; and he shared the proceeds of the robbery with his co-defendants (Vol. I at Supp. II at 162-207; T. at 199-200, 213).

Petitioner now appears to assert that motive is an element of robbery, and cites Beasley v. State in support of his argument. In Beasley, the Florida Supreme Court stated:

> When an "afterthought" argument is raised, the defendant's theory is carefully analyzed in light of the entire circumstances of the incident. If there is competent, substantial evidence to uphold the robbery conviction, and no other motive for the murder appears of record, the robbery conviction will be upheld. Conversely, in those cases where the record discloses that, in committing the murder, the defendant was apparently motivated by some reason other than a desire to obtain the stolen valuable, a conviction for robbery (or the robbery aggravator) will not be upheld.

774 So. 2d at 662.   Therefore, under Beasley, where the motive for the murder is not the taking of property, the crime of robbery is not made out with respect to a *later* taking. See Concepcion v. State, 938 So. 2d 559, 561-62 (Fla. 5th DCA 2006).

Petitioner's reliance on Beasley is misplaced; this is not a case "in which there is another apparent motivation for the killing, and no indication that the defendant wants or needs the valuables which are taken after the murder." Beasely, 774 So. 2d

at 666.  Nor is this a case where "the taking of property occurred as an afterthought to the use of force or violence against the victim." Fla. Std. Jury Inst. (Crim.) 15.1.[6]  The robbery of Islis Lafitte's store occurred *prior* to her murder and was not, as was the instance in Beasley, an afterthought to the crime of murder. Therefore, the evidence presented at trial supported a finding of robbery as a basis for Petitioner's conviction under a felony murder theory.

After viewing the evidence in the light most favorable to the state, the Court concludes that a rational trier of fact could have found each element of robbery beyond a reasonable doubt.  The state court's adjudication of this claim was neither contrary to Jackson nor based upon an unreasonable determination of the facts. In addition to being unexhausted, Claim Two fails on the merits. 28 U.S.C. § 2254(d).

---

[6] The Florida Supreme Court has promulgated a standard jury instruction on afterthought, to be given "if applicable."  The instruction reads:

> If you find that the taking of property occurred as an afterthought to the use of force or violence against the victim, the taking does not constitute robbery, but may still constitute theft.

Fla. St. Jury Inst. (Crim.) 15.1

C.   **Claim Three**

Petitioner asserts that appellate counsel was ineffective for "failing to raise the afterthought issue in a felony murder prosecution where the state abandoned premeditation. Thus, entitling Petitioner to an instruction afterthought where there was evidence to support afterthought as a theory of defense." (Doc. 2 at 9). Petitioner raised this issue in his state habeas petition, and it was rejected by Florida's Second District Court of Appeal without a written opinion (Ex. 7); Nunez, 956 So. 2d at 1191. Respondent agrees that Claim Three is exhausted to the extent raised in his state habeas petition, but urges that Petitioner has not demonstrated prejudice from appellate counsel's alleged failure (Doc. 25 at 30-34).[7] Specifically, Respondent notes that the claim was not preserved for review, and Petitioner "did not demonstrate that lack of an afterthought instruction constituted fundamental error under Florida law." Id. at 34.

This Court agrees with Respondent that Claim Three fails on the merits. As noted by Respondent, the claim was not preserved

---

[7] The standard of ineffective assistance of appellate counsel is the same as the standard for ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Smith v. Murray, 477 U.S. 527, 535-536 (1986) (applying Strickland to claim of attorney error on appeal). Therefore, Petitioner must satisfy the Strickland standard, and show that his appellate counsel's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

for appellate review.  Appellate counsel is not deemed ineffective for failing to raise issues unpreserved for appeal. Medina v. Dugger, 586 So. 2d 317, 318 (Fla. 1991).  An exception exists if appellate counsel fails to raise a claim, although not preserved for appeal, which presents a fundamental error.  A fundamental error is an error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So. 2d 895, 898 (Fla. 1996) (citations omitted).

The afterthought issue was not a claim of fundamental error because it would have been illogical for trial counsel to have sought an afterthought jury instruction.  The robbery of the store was not an afterthought to the "use of force or violence against the victim," Fla. St. Jury. Inst. (Crim.) 15.1, and Petitioner has presented no authority for his assertion that motive is generally an element of robbery that must be proven to the jury.  See discussion supra Claim Two.

Trial counsel was not ineffective for failing to raise a frivolous issue, and appellate counsel was not ineffective for failing to argue that the lack of an afterthought jury instruction constituted fundamental error. Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).  Petitioner has failed to demonstrate that the Second District Court of Appeal's rejection

of this claim was contrary to Strickland or was based upon an unreasonable determination of the facts.  Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

### D.   Claim Four

Petitioner asserts that appellate counsel was ineffective for failing to argue that the trial court coerced the jury into delivering an undecided verdict when the jury questioned the court on two occasions (Doc. 1 at 10).  Petitioner asserts that the jurors were "hung" and requested a recess for lunch (Doc. 2 at 12).  He claims that trial counsel requested that lunch be brought to the jurors, but that the prosecutor responded that the jurors would "take advantage of that," and the trial court agreed.  Id. Petitioner asserts that the trial court was required to give an Allen[8] instruction and that the court's failure to do so "allowed the jurors to believe that they were required to reach a verdict even if it meant compromising their positions."  Id.  Petitioner raised this claim in his state habeas petition, and it was rejected by Florida's Second District Court of Appeal without a written opinion (Ex. 7); Nunez, 956 So. 2d at 1191.  Respondent agrees that Petitioner's claim is exhausted to the extent raised in his state habeas petition, but asserts that no coercive instructions

---

[8] Allen v. United States, 164 U.S. 492 (1896).  The Allen charge "instructs a deadlocked jury to undertake further efforts to reach a verdict." United States v. Chigbo, 38 F.3d 543, 544 n.1 (11th Cir. 1994).

were given to the jury, and accordingly, Petitioner cannot demonstrate prejudice (Doc. 25 at 35-39).

The Court concludes that Claim Four fails on both prongs of Strickland because no Allen charge was warranted. The record contains no evidence that the jury ever alerted the trial court that it was "hung" or was in any way having difficulty reaching a verdict. Rather, the record contains two notes written to the trial court only an hour and fifteen minutes and two hours and forty-eight minutes after deliberations began (Ex. 1 at 73). The jury convened at 2:30 p.m. Id. At 3:47 p.m., the first note was sent to the court asking for the definition of "agency" in second degree murder and the definition of "conscious intent" as used in the definition of "principals" (Ex. 1 at 56; T. at 411). The note did not indicate that the jurors were having difficulty reaching a verdict. After discussing the appropriate definitions with defense counsel and the prosecutor, the court had the jury brought into the courtroom and defined the terms at 4:11 p.m. (T. at 413-19). The jurors were then instructed to resume their deliberations. Id. at 419. Subsequently, at 5:18 p.m. the jurors asked whether the "principal" definition applied to the robbery charge (Ex. 1 at 55). Again, the second note contained no indication that the jury could not reach a verdict, and the query

was answered by Judge Blackwell at 5:25 p.m. with a notation that "all the instructions apply to both charged crimes."[9] Id.

Petitioner does not explain how appellate counsel was ineffective for not arguing that an Allen charge was required merely because the jury had questions regarding the definitions of legal terms. To the contrary, Florida appellate courts have concluded that it is error for a trial court to read a deadlock instruction in the absence of the jury's assertion of deadlock because it is the charge itself that can be considered coercive. See Armstrong v. State, 364 So. 2d 1238 (Fla. 1st DCA 1977)(giving of jury deadlock charge when jury, after having retired to consider verdict, returned to courtroom with question, without indication from jury that they were deadlocked was error, although not fundamental error); Gahley v. State, 567 So. 2d 456 (Fla. 1st DCA

_____

[9] This second note regarding the definition of "principal" is not mentioned in the trial transcript.  A copy of the note is contained in the record on direct appeal and appears to have been answered by Judge Blackwell in a written note and not on the trial record (Ex. 1 at 55).  The court clerk's Jury Trial Notes indicated that two questions were asked by the jury. Id. at 73-7.  One question occurred at 3:47 p.m. and the second at 5:18 p.m.  Judge Blackwell indicated that the second note was answered at 5:25 p.m.  Also not mentioned in the trial transcript is any indication that defense counsel requested that the jurors be provided with lunch or that the trial court denied such a request.  This Court is constrained to the record that was before the state court that adjudicated this claim and will not consider Petitioner's self-serving statements regarding off the record conversations between counsel and the trial court. See Pinholster, 131 S. Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court.").

1990) (error for court to give deadlock instruction when there had been no assertion of deadlock); Moore v. State, 635 So. 2d 998 (Fla. 4th DCA 1994) ("[T]he trial court erred in giving a deadlock charge to the jury, over appellant's objection, on the same Friday afternoon that the jury began deliberations, and at a time when there was no indication that the jury was deadlocked."); see also Washington v. State, 758 So. 2d 1148 (Fla. 4th DCA 2000) (finding that a trial judge is not required to give an Allen charge in response to a jury's indication of deadlock; exercising its discretion, the court may delay the giving of an Allen instruction for a short time to allow jurors an opportunity for further discussion without intervention or direction from the court).

Neither is this a case where the trial court deviated substantially from the approved deadlock charge in Florida Standard Jury Instruction 4.1. See Rodriguez v. State, 462 So. 2d 1175 (Fla. 3d DCA 1985) (finding that trial court erred by reading "manifestly coercive" deadlock instruction to the jury). The only instruction from the trial court after the jury's second note was an instruction for the jurors to "take your instructions with you and resume your deliberations." (T. at 419). Accordingly, there is no basis for finding that appellate counsel was ineffective for failing to raise this issue on direct appeal. Claim Four is denied.

### F.    Claim Six

Petitioner asserts that trial counsel was ineffective for failing to properly investigate his case (Doc. 1 at 13). Petitioner asserts that "had counsel investigated, he would have been prepared to seek a new trial, based on the cumulated violations of Petitioner's rights." Id.    Petitioner raised this claim in his first Rule 3.850 motion, and Petitioner was granted an evidentiary hearing on the claim (Ex. 11; Ex. 13).    After the evidentiary hearing, the post-conviction denied the claim:

> [T]he Defendant alleges in his motion that his
> trial counsel was ineffective for not properly
> investigating his claim that detectives
> obtained the Defendant's confession by making
> promises and threats.    The Defendant
> testified that his confession to police
> detectives was obtained by the use of threats
> and coercion.    He testified that the police
> promised him immunity and used his co-
> defendants' statements to threaten him with
> more significant charge.    However, Mr.
> Orlando testified that the Defendant had never
> informed him about the use of threats or
> coercion in regard to the Defendant's
> statement.    Mr. Orlando stated that if he had
> known about this he would have pursued this
> issue with State and in depositions; however,
> this was the first that he had heard of these
> claims.    Mr. Orlando testified and the record
> indicates that he did, in fact, file a motion
> to suppress the Defendant's statement to
> police based on the fact that it was
> involuntary due to the defendant's
> intoxication.    Mr. Orlando argued the motion
> to suppress before trial, but after reviewing
> the record and listening to the Defendant's
> taped statement the Judge denied the motion.
> The Court finds that the Defendant didn't
> inform his trial counsel of the coercion

issue, either before or during the hearing on
the motion to suppress which he attended.  The
Defendant has failed to satisfy both prongs of
the Strickland test, and therefore has failed
to demonstrate an entitlement to the relief
requested.

(Ex. 15 at 3).  The post-conviction court's rejection of this

claim was affirmed by the Second District Court of Appeal (Ex.

20); Nunez, 65 So. 3d at 524.  Respondent asserts that Petitioner

has not demonstrated that the state court's application of the

Strickland standard was unreasonable (Doc. 25 at 41).  Indeed, a

review of the record supports the state court's denial of Claim

Six.

At the evidentiary hearing, Petitioner asserted that, prior

to his confession, the police "threatened" him with the testimony

of Ernesto Mireles "where they told me that – that he had testified

that I was an assailant in the crime and that my brother was the

one who pulled the trigger." (E. H. at 17-18).  Petitioner stated

that the police told him that if he testified truthfully against

Mireles, he would get immunity. Id. at 17.  Petitioner asserted

that he told counsel about the promises and threats, but counsel

told him that "he didn't think it was going to be good" and filed

the  motion  to  suppress  based  solely  upon  Petitioner's

intoxication. Id. at 18-19.

Defense counsel Michael Orlando ("Orlando") testified that he

filed a motion to suppress Petitioner's statements to the police

based upon the information Petitioner provided to him. Id. at 62-63.  He stated that Petitioner did not tell him about any threats or promises and, had Petitioner done so, "he clearly would have pursued that." Id. at 63-64.  Orlando also testified that even had he filed such motion, it would not have been granted because nothing in Petitioner's statement suggested any of the things he was now saying. Id. at 64.

The post-conviction court recognized that Petitioner's testimony was in direct conflict with Orlando's testimony, but found Orlando's testimony to be more credible and concluded that Petitioner never told Orlando that his statement to the police was coerced through threats or promises (Ex. 15 at 3).  Questions of the credibility and demeanor of a witness are questions of fact. Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999).  The AEDPA affords a presumption of correctness to a factual determination made by a state court, and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).  Moreover, determining the credibility of a witness, "is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while reviewing court also gives a certain amount of deference to

credibility determinations, that deference is heightened on habeas review) (citing <u>Rice v. Collins</u>, 546 U.S. 333, 341–42 (2006) ("[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983).

Petitioner has not shown by clear and convincing evidence that the state court unreasonably determined that he failed to inform Orlando about any possible threats or promises made by the police.  Recognizing this fact, Petitioner argues in his reply that "even assuming Petitioner failed to inform his counsel about the misconduct by [police], counsel still had a duty to conduct a reasonable pre-trial investigation surrounding the case especially where there is involved a confession." (Doc. 28 at 10).  Petitioner has not presented any evidence, other than his own self-serving statements, that his confession was actually coerced or presented support for his position that no competent counsel would have failed to investigate possible police coercion in the absence of any indication by his client or other evidence that such coercion actually occurred. <u>See</u> <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (to show that counsel's performance was

unreasonable, a defendant has the burden of proving that "no competent counsel would have taken the action that his counsel did take"); see also Henyard v. McDonough, 459 F.3d 1217, 1245 (11th Cir. 2006) (determining that counsel's failure to investigate or present evidence of defendant's childhood sexual abuse was not deficient performance because defendant repeatedly denied being sexually abused).

Nothing in Petitioner's statement to the police suggests that his statement was coerced, and when Petitioner testified at trial, he did not assert that his confession was coerced, even when cross examined about his statements to the police (T. at 361).  Moreover, Orlando testified that any motion to suppress would probably not have been granted because nothing on the record suggested that the confession was involuntary (E. H. at 64-65). Given the likelihood that the district court would have rejected any motion to suppress based on an alleged coercion, Petitioner cannot establish prejudice arising from counsel's failure to further investigate. Petitioner has failed to show that the state court's adjudication of this claim was contrary to either prong of Strickland or was based upon an unreasonable determination of the facts.  Claim Six is denied pursuant to 28 U.S.C. § 2254(d).

G.   Claim Seven

Petitioner asserts that trial counsel was ineffective for failing to call Bartolo Gonzalez as a defense witness to testify

that Petitioner's "co-felons pressured petitioner a lot, amounting
to threats which is probably why petitioner was part of the
robbery." (Doc. 2 at 21).   Petitioner raised this claim in his
first Rule 3.850 motion, and Petitioner was granted an evidentiary
hearing on the claim (Ex. 11; Ex. 13).   After the evidentiary
hearing at which Petitioner, Orlando, and Bartolo Gonzalez
testified, the post-conviction denied the claim:

> [T]he Defendant asserts in his motion that his
> trial counsel was ineffective for failing to
> call Bartolo Gonzales as a witness at trial
> because that testimony would have supported
> the Defendant's claims that his role in the
> crime was independent of his co-defendants.
> The Defendant testified at the evidentiary
> hearing that Bartolo Gonzales was available
> during the trial to testify and would have
> testified that the Defendant's "friends"
> pressured him to participate in the crime.
> The Defendant also state that he told his
> trial counsel about this witness ant that his
> trial counsel agreed that he would be a good
> defense witness, but that his trial counsel
> never called the witness to testify at trial.
> The Defendant admitted during the hearing that
> Bartolo Gonzales was, in fact, on the witness
> lest for the Sate and that during trial the
> State had decided not to call him to testify.
> Mr. Orlando testified that he discussed
> calling this witness to testify with the
> Defendant and that they both agreed that it
> was best not to call him because the "bad far
> outweighed the good." Mr. Orlando stated that
> there were a number of things that this
> witness could have testified to that would not
> be helpful to the Defendant's case. In fact,
> Mr. Orlando testified that the Defendant was
> relieved when the State decided not to call
> this witness to testify. Mr. Orlando stated
> that the Defendant did testify at trial on his
> own behalf and that during his testimony they

> were able to get the positive information
> concerning Bartolo Gonzales on the record.
> The Court finds that the Defendant was in
> agreement with his trial counsel that it would
> not have been good trial strategy to call
> Bartolo Gonzales as a witness. Defendant has
> failed to meet his burden of overcoming the
> presumption that counsel's decision to not
> call a witness was the product of reasonable
> trial strategy.

(Ex. 15 at 3-4) (citations omitted). The post-conviction court's

rejection of this claim was affirmed by the Second District Court

of Appeal (Ex. 20); Nunez, 65 So. 3d at 524. Respondent asserts

that Petitioner has failed to factually support his assertion that

Gonzalez' testimony would have been helpful or show that Orlando's

decision to call Gonzalez as a witness was not based upon trial

strategy (Doc. 25 at 42-43). A review of the record, including

Gonzalez' deposition testimony, supports the state courts' denial

of this claim.

At the evidentiary hearing, Petitioner testified that he

wanted Gonzalez called as a defense witness because he could have

corroborated his (Petitioner's) testimony that he only reluctantly

participated in the crime and that Petitioner had told him that he

"didn't want to do this crime." (E. H. at 25).

Orlando testified at the evidentiary hearing that Gonzalez

was listed as a state witness, and he (Orlando) deposed him (E. H.

at 65). Orlando became concerned that Gonzalez could testify that

Petitioner was the primary orchestrator of the escape to Texas and

that Petitioner had been deceptive with Gonzalez in terms of what he told him prior to leaving for Texas. Id. at 66. Orlando also testified that Gonzalez attested that, somewhere in Louisiana, Petitioner stated that "I was stupid; I never should have been with you guys. My life's over. I don't know what the hell I'm going to do." (E. H. at 69). Orlando was unsure as to whether the statements would have been admissible at trial. Id. Orlando said that he never promised Petitioner that Gonzalez would be called as a witness and that Petitioner never expressed a desire for Petitioner to be called. Id. Orlando stated that he "basically reviewed the balance of the – of the testimony and I agreed that it was best that [Gonzalez] not testify, and that was in concurrence with [Petitioner]." Id. at 70. Counsel also testified that Gonzalez had stated in his deposition that he received a call from Petitioner after Gonzalez returned to Florida in which Petitioner told Gonzalez that Petitioner's brother and wife "had ratted him out; go take care of them. They're not going to get away with that." Id. at 71. Orlando felt that in light of the limited benefit of Gonzalez' testimony, "the bad far outweighed the good" and asserted that "Mr. Nunez agreed that the cons outweighed any benefit, possible benefit that [Gonzalez] could have provided. It was as simple as that. That's it." Id. at 71, 81. Orlando believed that all of the positive information could be presented through Petitioner's testimony at trial without "the

danger of giving a lot of the details that Mr. Gonzalez could have thrown in there." Id. at 72.

Gonzalez testified at the evidentiary hearing that he agreed to drive Petitioner and his co-defendants to Texas and that somewhere near Louisiana, Petitioner became upset and "realized what a stupid thing they had done. And – and he was starting to freak out, you know, let me – they ruined my life, you know." (E. H. at 96-97). Gonzalez made similar statements in his deposition, but asserted that after Petitioner's lamentation, his co-defendants responded to Petitioner's statements by telling him "you said you wanted to come" and to just "shut up." (Ex. 21 at 31, 90). He also testified that Petitioner had called him from Texas and told him that he believed Noe (Petitioner's brother) and his wife had "ratted him out" and that Gonzalez should "go take care of them." (Ex. 21 at 82). Gonzalez explained in the deposition that he believed Petitioner to be drunk when he made that call. Id.

Trial counsel has broad discretion in determining strategy, and in deciding which witnesses to investigate and call. Chandler, 218 F.3d at 1314, n.16, n.17. "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" Id. at 1314 (quoting Darden v. Wainwright, 477 U.S. 168, 186-87 (1986). Tactical decisions within the range of reasonable

professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983). Here, a reasonable attorney may have concluded that Gonzalez' testimony would not have been helpful to, and in fact may have harmed, Petitioner's case, and that the evidence of Petitioner's reluctant participation in the robbery would be better presented through Petitioner's own testimony because doing so would eliminate the danger of the "details" that Gonzalez could have provided (E. H. at 72). Therefore, Petitioner has not shown that the Florida Supreme Court's application of Strickland was objectively unreasonable or was based upon an unreasonable determination of the facts. Claim Seven is denied pursuant to 28 U.S.C. § 2254(d).

### H.   Claims Nine and Ten

In Claim Nine, Petitioner argues that the trial court erred when it gave an outdated jury instruction on the lesser included offense of second degree murder (Doc. 1 at 18). In Claim Ten, Petitioner asserted that defense counsel was ineffective for failing to object to the outdated jury instruction. Id. at 20.

The instruction to which Petitioner objects was the instruction on the lesser included offense of second degree murder read to the jury by Judge Blackwell:

> Before you can find the Defendant guilty of
> second degree murder, the State must prove the
> following three elements beyond a reasonable
> doubt:  Islis Laffitte is dead, that's Number
> One; two, the death was caused by the criminal
> act or agency of Salvador Nunez; three, there
> was an unlawful killing of Islis Laffitte by
> an act imminently dangerous to another and
> evincing a depraved mind regardless of human
> life.

(T. at 396).  Petitioner asserts that the instruction was amended in 1996 remove the term "or agency" and to replace the word "evincing" with "demonstrating." (Doc. 10 at 25-26).  Petitioner asserts that the jury was "confused and misled" by the instruction as was demonstrated by the jury's note to the trial court asking for a definition of the word "agency." (Doc. 2 at 26).

Respondent asserts that both of these claims are unexhausted and procedurally defaulted because Petitioner did not raise Claim Nine on direct appeal and did not raise Claim Ten in a timely filed Rule 3.850 motion and appeal the denial (Doc. 25 at 44).  Instead, Petitioner attempted to raise both of this claims in a 2010 Rule 3.850 motion which was dismissed by the post-conviction court as being filed "well beyond the two year time limit of Fla. R. Crim. P. 3.850[.]" (Ex. 37; Ex. 38).

In reply, Petitioner "concedes" that the claims are unexhausted, but then argues that "[w]herefore, under the plain and clear circumstances of what occurred (above) the petitioner prays that this court embrace the relief requested in document #1

as anticipated by petitioner." (Doc. 28 at 12).  Because of the ambiguous nature of the words in Petitioner's reply, in an abundance of caution, the Court will construe Petitioner's request that this Court "embrace the relief requested in document #1" as an attempt to show cause for and resulting prejudice from his failure to exhaust these claims.  However, upon review of the pleadings, the Court concludes that Petitioner's failure to exhaust these claims in the state courts precludes federal habeas review.

As noted, procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show cause for the default and actual prejudice resulting from the default. Petitioner has not presented this Court with any reasons for failing to raise these issues in state court.  Nor has Petitioner presented "new and reliable" evidence to demonstrate the applicability of the actual innocence exception to the procedural bar. See Calderon 523 U.S. at 559.  Claim Nine, Petitioner's claim that the trial court erred by reading the incorrect jury instruction for second degree murder, should have been raised on direct appeal.  Petitioner has made none of the requisite showings to excuse the default of Claim Nine which bars federal habeas review of this claim.

As to the ineffective assistance of counsel claim raised in Claim Ten, in <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Id.</u> at 1320.  In 2013, the Supreme Court confirmed that the <u>Martinez</u> ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. <u>Trevino v. Thaler</u>, 133 S. Ct. 1911, 1921 (2013).

Even under <u>Martinez</u>, however, Petitioner cannot show cause to excuse the procedural default of Claim Ten because Petitioner still must establish that his underlying ineffective assistance claim is "substantial." <u>Martinez</u>, 132 S. Ct. at 1318-19.  He has not met this requirement for overcoming the procedural default; Petitioner has failed to show that his underlying ineffective assistance claim is substantial – that is, that it has "some merit." <u>Id.</u> at 1318.

Petitioner argues that the trial court read the incorrect jury instruction for second degree murder and that the error was fundamental in nature because "it abrogated the validity of the

trial itself to the extent that a verdict of second-degree murder could not have been entered without the alleged errors." (Doc. 2 at 28).   Petitioner further argues that had the correct jury instruction been read, the jury may have exercised its "inherent pardon power" by finding him "guilty of the next lesser offense." Id.  Petitioner's arguments are illogical for two reasons.

First, Petitioner was not convicted of second degree murder. He was convicted of first degree murder (Ex. 1 at 52-53, 113). Next, the record does not establish a reasonable probability that the outcome of the proceeding would have been different had counsel raised an objection to the jury instruction on second degree murder.  The jury found beyond a reasonable doubt that Petitioner committed first degree murder and presumably found every element of first degree murder proved beyond a reasonable doubt.

In considering a claim of ineffective assistance of counsel based upon counsel's failure to request a lesser included offense instruction, the Eleventh Circuit Court of Appeals has held that a petitioner's "assertions that he would have been convicted of the lesser included offense, as opposed to the greater offense, are pure speculation[.]" Harris v. Crosby, 151 F. App'x 736, 738 (11th Cir. 2005).  Consequently, Petitioner has not undermined this Court's confidence in his conviction for first degree felony murder.

Petitioner argues that the jury could have exercised its pardon power and found him guilty of second degree murder if the updated jury instructions had been read to the jury (Doc. 2 at 28). However, the mere possibility of a jury pardon cannot form the basis for a finding of prejudice under Strickland. See Strickland, 466 U.S. at 695 ("[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like."). In Sanders v. State, 946 So. 2d 953 (Fla. 2006), the Florida Supreme Court said, in regard to meeting the prejudice prong, that "any finding of prejudice resulting from defense counsel's failure to request an instruction on lesser-included offenses necessarily would be based on a faulty premise: that a reasonable probability exists that, if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions." Id. at 959; see also Bell v. McNeil, 353 F. App'x 281, 286 (11th Cir. 2009) (finding petitioner failed to show that the jury probably would have convicted him of a lesser offense, and the state court reasonably concluded that petitioner failed to show a reasonable probability of a different outcome).

Because the record does not establish that the outcome of the proceeding would have been different had counsel raised an objection to the jury instructions on second degree murder, Petitioner could not show prejudice from counsel's failure to do

so.    Consequently,  Petitioner  has  not  shown  that  Claim  Ten  is
"substantial" so as to excuse his procedural default of this claim.
Accordingly,  both  Claim  Nine  and  Claim  Ten  are  dismissed  as
unexhausted and procedurally barred.

### I.    Claims Eleven, Twelve, and Thirteen

Petitioner asserts that the trial court erred in dismissing
three of his Rule 3.850 claims "as being time barred without going
into the merits of Petitioner's claim to determine if a manifest
injustice occurred when Petitioner was denied effective assistance
of counsel." (Doc. 1 at 21-25).   Specifically, he asserts that the
post-conviction court should have considered his claims that: (1)
counsel  was  ineffective  for  failing  to  request  a  competency
hearing; (2) the trial court erred by reading an outdated jury
instruction  on  second  degree  murder;  and  (3)  counsel  was
ineffective for failing to object to an outdated jury instruction
on second degree murder. <u>Id.</u>   Respondent asserts that "these
grounds present issues which are not cognizable on federal review
and [are] procedurally barred." (Doc. 25 at 45).   Respondent is
correct.

A prisoner's challenge to the process afforded him in a state
post-conviction proceeding does not constitute a cognizable claim
for habeas corpus relief.   Rather, such a claim represents an
attack on a proceeding collateral to the prisoner's confinement
and not the confinement itself. <u>Carroll v. Sec'y Dep't of Corr.</u>,

574 F.3d 1354, 1366 (11th Cir. 2009) (habeas petitioner's claim—that the state court violated his due process rights when it summarily denied his postconviction claim without an evidentiary hearing—did not state a claim on which federal habeas relief could be granted); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (a state court's failure to conduct an evidentiary hearing on a postconviction motion does not constitute a cognizable claim for federal habeas relief).

Therefore, to the extent that Petitioner seeks relief based on the ground that his 2010 Rule 3.850 motion was dismissed by the state court as time-barred, he fails to state a claim cognizable on habeas review, and Claims Eleven, Twelve, and Thirteen are dismissed on this basis.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[10]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.

---

[10] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'", Miller-El, 537 U.S. at 335–36 (citations omitted). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.  The Florida Attorney General is **DISMISSED** as a named Respondent.

2.  The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Salvador Nunez (Doc. 1) is **DENIED IN PART** and **DISMISSED IN PART**.  Claims One, Two, Three, Four, Six, and Seven, Nine, Ten, Eleven, Twelve, and Thirteen are dismissed with prejudice. Alternatively, Claims One, Two, Three, Four, Six, and Seven are

denied on the merits.   Claims Five and Eight are dismissed as abandoned.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this   23rd   day of October, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: All Parties of Record